IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ANTONIO SMITH, : | |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | Civil Action No. |
| : | **5:08-CV-23 (HL)** |
| MICHAEL J. ASTRUE, : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant. : | |

**RECOMMENDATION**

The plaintiff herein filed an application for disability insurance benefits and Supplemental Security Income benefits on November 7, 2003. The application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge, which was held on September 12, 2006. On December 26, 2006, the ALJ denied plaintiff's claim. The Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. The plaintiff subsequently filed an appeal to this court. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted.

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person

would accept the evidence as adequate to support the conclusion at issue.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971).  In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  Bloodsworth, 703 F.2d at 1239.  "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  Cornelius, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits.  The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims:  (1) whether the claimant is engaged in gainful employment;  (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months;  (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1;  (4) whether the impairments prevent claimant from returning to his previous work;  and (5) whether claimant is disabled in light of age, education, and residual functional capacity.  Ambers v. Heckler, 736 F.2d 1467, 1470-71 (11th Cir.1984).  Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age,

education, and work experience. 20 C.F.R. § 404.1520(d).

The ALJ determined that plaintiff had a "severe" impairment of degenerative disc disease of the lumbar spine, degenerative joint disease of the hips and a seizure disorder - not epilepsy. The ALJ determined that plaintiff could perform a limited range of light work. The ALJ found that plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand/walk at least two hours in an eight-hour work day, and sit for six hours in an eight-hour work day, but must avoid climbing ladders, ropes, and scaffolds and avoid all exposure to hazards, and would be limited to simple work with only one to two step instructions (Tr. 17).

Plaintiff first complained of hip and back pain on April 21, 2003, when he was seen in the emergency room of the Medical Center of Central Georgia (MCCG) after a reported fall the weekend before (Tr. 232).[1] At this time, Plaintiff's gait was steady but he reported a limited range of motion due to pain and some swelling of his joints (Tr. 234). During a subsequent appointment on August 6, 2003, physical exams revealed a full range of motion and a steady gait (Tr. 230, 285-86). On August 11, 2003, an x-ray of Plaintiff's lumbar spine showed spondylolysis at L1 bilaterally with only minimal spondylolisthesis of the L5 on S1 (Tr. 18, 225). An x-ray on this same date also revealed moderate to marked degenerative changes of both hips (Tr. 18, 226).

Plaintiff saw Dr. Gregory Eilers, a family practice physician (Tr. 268), from December 11, 2003 to June 8, 2004 (Tr. 18, 150-64). During this period Plaintiff primarily complained of lower back pain (Tr. 150, 152, 158, 162). During an initial appointment Plaintiff stated that he had weakness in his legs and would not allow an obturator check due to what he claimed was discomfort from his degenerative hips (Tr. 162-63). However, during subsequent appointments

Plaintiff primarily complained of lower back pain and some leg weakness, and did not complain of pain or discomfort in the area of his hips (Tr. 150, 152, 158).

As the ALJ noted, Plaintiff underwent a total right hip replacement on December 17, 2004 (Tr. 18, 202, 236). Following his surgery, on January 10, 2005, Plaintiff was admitted to the hospital complaining of chest pain (Tr. 238-42). A physical examination revealed no pedal edema and reflexes were intact in the lower extremities (Tr. 240). Plaintiff reported some pain in his lower back, but reported that there was no radiation into the lower extremities (Tr. 241). Plaintiff reported that his back pain improved during his hospitalization (Tr. 241).

A complete myelogram, CT lumber and CT cervical myelograms were performed on March 29, 2004 (Tr. 255-56). These myelograms revealed a mild diffuse disc bulge at L3-L4, bilateral pars defects with a grade I anterolisthesis at L5-S1, and minimal diffuse bulge at L5-S1 (Tr. 255). A MRI of Plaintiff's lumbar spine taken on October 4, 2005, revealed mild degenerative disc disease at L5-S1 with a "mild" pseudo disc bulge, "very minimal to mild" spondylolisthesis at L5-S1 with a possible annular tear (Tr. 252, 322). There was also "mild" degenerative disc disease and disc protrusion at L3-L4 and a "mild" disc bulge at L4-L5 (Tr. 252, 322). Similar findings were recorded on October 12, 2005 (Tr. 317). An April 26, 2006, radiology report reflected grade I anterolisthesis at L5-S1 with bilateral spondylolysis, stable from the October 2005 examination (Tr. 305). No acute abnormalities were demonstrated (Tr. 305).

In addition to reporting back pain on three occasions after a fall (Tr. 213, 221, 232), Plaintiff also reported back pain following two motor vehicle accidents (Tr. 280, 306). On October 13, 2005, Plaintiff was seen in the MCCG urgent care center complaining of upper neck and back pain following a motor vehicle accident in which he was the driver (Tr. 280). Similarly

on April 20, 2006, Plaintiff was seen in the MCCG urgent care center complaining of neck and back pain following a motor vehicle collision in which he was the passenger (Tr. 306).

Evidence was presented to the Appeals Council but not to the ALJ. This evidence includes records from the Georgia Neurosurgical Institute covering the period from October 4, 2005 to February 19, 2007. Initially, a MRI of October 4, 2005, showed a bilateral pars defect at L5-S1 with a possible annular tear along the posterior aspect to that disc centrally and to the left (Tr. 377). Lumbar x-rays on April 21, 2006, showed persistent grade AI anterolisthesis of L5 on S1 with bilateral spondylosis (Tr. 373).

On the visit of April 28, 2006, Dr. Kassam recommended facet blocks to try to deal with Mr. Smith's chronic pain complaints (Tr. 371). A left hip x-ray on September 27, 2006, showed "rather marked degenerative changes in the left hip" (Tr. 370). By January 29, 2007, Dr. Robinson wanted Mr. Smith to see Dr. Fried for evaluation of the hip and possible fusion (Tr. 369). Similarly, on the visit of February 19, 2007, Dr. Robinson was considering whether to do a posterior decompression and fusion at L5-S1 or a hip procedure (Tr. 367). Dr. Robinson wanted Dr. Fried to express his opinion on that decision. Id.

Mr. Smith also submitted records from the Medical Center of Central Georgia covering the period from May 1, 2006 to June 18, 2007. On May 1, 2006, Mr. Smith was noted to be receiving mental health treatment via medications including Trazadone and Lexapro (Tr. 365). On September 27, 2006, Mr. Smith was seen complaining of "a lot of trouble with the left hip" (Tr. 362). On examination, Mr. Smith has a positive straight leg raise on the left. Id. X-rays at that time showed "rather marked degenerative changes in the left hip" (Tr. 364). On March 14, 2007, Mr. Smith was assessed as having "severe" degenerative joint disease of the left hip (Tr.

359). Finally, Mr. Smith was admitted to the Medical Center on June 8, 2007, and underwent surgery in the form of a left total hip replacement (Tr. 357).

Plaintiff submits new evidence for the first time on appeal herein.[1]  To obtain a sentence six remand, a claimant must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there is a reasonable probability that it would change the administrative results; and (3) there is good cause for failure to submit the evidence at the administrative level. Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir.1988) (internal citations and quotation marks omitted).

The new evidence submitted for the first time to the court (doc. 11) consists of a two page letter from treating orthopedist surgeon, Dr. Jeffrey Fried, dated May 15, 2008.  In the letter, Dr. Fried gives a longitudinal recitation of plaintiff's orthopedic conditions, examinations, and limitations, as well as an assessment of plaintiff's residual functional capacity and the opinion that plaintiff was currently disabled and was likely to remain so for a period of time pending two additional surgeries and recovery therefrom.  Plaintiff also submits another letter from Dr. Fried dated July 30, 2008 (doc. 15), clarifying that the limitations set out in his original letter of May 2008 were in place for several years.  Dr. Fried assigned Mr. Smith's numerous functional limitations that would have been in placed since April of 2003. These limitations include walking for no more than 5-10 minutes before stopping, no significant pushing or pulling with the legs, the need for a cane to ambulate, no standing or walking over 1 hour a day, sitting for no

---

[1]Plaintiff also raises other issues relative to plaintiff's left hip condition.  However, in light of the recommendation to remand for consideration of the new evidence, the undersigned will not specifically address those issues other than to state that the new evidence should be evaluated in the context of the administrative record as a whole.

more than 5 hours a day due to aggravation of pain resulting from sitting, lifting 20 pounds rarely, and

fair balance (Page 1). Dr. Fried also concluded that Mr. Smith has a limited ability to bend, stoop, twist, kneel, crawl, rarely walking up steps, and occasional reaching, and that his pain medications could affect alertness.

The Commissioner argues that Dr. Fried's letter is not material, as it includes evidence already in the record; that the opinion does not relate back to the relevant period of time, which is prior to the decision of the ALJ on December 26, 2006; and the opinion as to disability is not relevant as that is an issue exclusively reserved for the Commissioner ( 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)).

The undersigned finds that this evidence is relevant and material.  Dr. Fried presents a longitudinal review of plaintiff's hip and back problems, including the fact that plaintiff had to have surgery on his left hip shortly after the ALJ rendered his decision.  Dr. Fried also presents a review of plaintiff's functional limitations, and an opinion as to the length of time plaintiff has had these functional limitations, which he states have been in place since 2003.   This new evidence could reasonably be expected to change the outcome of the case.  The undersigned also finds that plaintiff has shown good cause for failing to present the evidence at the Administrative level; while some of the evidence was in existence at the Administrative level, some of it was not and could not have been produced earlier.  The undersigned finds that the new evidence could confirm plaintiff's allegations of complete disability, and could therefore change the outcome.

Therefore, it is the RECOMMENDATION of the undersigned that this matter be **REMANDED** to the Commissioner under sentence six for consideration of the new evidence in

light of the entire administrative record.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 18th  day of February, 2009.

                                                  //S Richard L. Hodge  
                                                  RICHARD L. HODGE  
msd                                      UNITED STATES MAGISTRATE JUDGE